MANATT, PHELPS & PHILLIPS, LLP
GREGORY N. PIMSTONE (Bar No. 150203)
Email: gpimstone@manatt.com
ILEANA M. HERNANDEZ (Bar No. 198906)
Email: ihernandez@manatt.com
MARINA SHVARTS (Bar No. 314146)
Email: mshvarts@manatt.com
2049 Century Park East, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

*Attorneys for Defendants*
BLUE SHIELD OF CALIFORNIA LIFE &
HEALTH INSURANCE COMPANY and
CALIFORNIA PHYSICIANS' SERVICE dba
BLUE SHIELD OF CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DIVISION

| | |
|---|---|
| BOND PHARMACY, INC. dba ADVANCED INFUSION SOLUTIONS,<br><br>            Plaintiff,<br><br>      v.<br><br>BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE; CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA; and DOES 1-10 inclusive,<br><br>            Defendants. | Case No. 2:23-cv-01497-MRW<br><br>Hon. Michael R. Wilner<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) AND 12(f); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        July 26, 2023<br>Time:        9:30 a.m.<br>Courtroom: 550 |

1  TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on July 26, 2023 at 9:30 a.m., or as soon

3  thereafter as the matter may be heard by the Honorable Michael R. Wilner in

4  Courtroom 550 of the United States District Court for the Central District of

5  California, 255 E. Temple Street, Los Angeles, California 90012, defendants Blue

6  Shield of California Life & Health Insurance Company and California Physicians'

7  Service dba Blue Shield of California (collectively "Blue Shield") will and hereby

8  do move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an

9  order dismissing the claims without leave to amend on the ground that the

10  complaint fails to state a claim against Blue Shield upon which relief may be

11  granted.

12  Blue Shield further moves, pursuant to Federal Rule of Civil Procedure 12(f),

13  for an order striking the complaint's jury demand with respect to the third and

14  fourth causes of action for violation of ERISA and the seventh cause of action for

15  violation of California Business & Professions Code section 17200, on the ground

16  that the law does not provide a right to a jury trial on these causes of action.

17  This motion is and will be based on this Notice of Motion and Motion and

18  the attached memorandum of points and authorities, the request for judicial notice

19  filed concurrently, all pleadings and papers on file in this matter, and all other such

20  evidence or argument as may be submitted to the Court at or prior to the hearing.

21  This motion is made following the conference of counsel pursuant to Local

22  Rule 7-3, which took place on May 11, 2023. Counsel were not able to resolve any

23  part of this motion.

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTIONS TO DISMISS AND STRIKE [FRCP 12(B)(6), 12(F)]]

1    Dated: May 19, 2023                 MANATT, PHELPS & PHILLIPS, LLP

2

3                                        By: /s/ Gregory N. Pimstone
                                            *Attorneys for Defendants*
4                                           BLUE SHIELD OF CALIFORNIA
                                            LIFE & HEALTH INSURANCE
5                                           COMPANY and CALIFORNIA
                                            PHYSICIANS' SERVICE dba BLUE
6                                           SHIELD OF CALIFORNIA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................... 1

II.  ALLEGATIONS OF THE COMPLAINT ..................................... 1

III.  STANDARD GOVERNING MOTION ........................................ 2

IV.  ARGUMENT ......................................................................... 2

    A.  AIS does not state an ERISA claim ................................... 2

        1.  AIS's third count fails to plead specific ERISA plan terms that provide the benefits at issue .............................. 2

        2.  AIS's fourth count is outside the scope of the alleged assignments ................................................................ 4

        3.  AIS fails to allege exhaustion of ERISA plans' remedies .......... 5

            a.  AIS fails to allege exhaustion of any ERISA claim ........ 5

            b.  AIS fails to allege any viable excuse for failure to exhaust .............................................................. 6

                (1)  A court cannot create an exception to exhaustion where the ERISA plan language is absolute .............. 7

                (2)  AIS fails to allege futility ................................ 8

                (3)  AIS fails to allege a basis for any claim to be deemed exhausted ........................................ 9

        4.  AIS lacks standing to sue under ERISA where it did not obtain a valid assignment ........................................ 9

        5.  AIS has no valid assignment where the member's ERISA plan precludes assignment ........................................ 10

    B.  AIS does not state a claim for breach of implied-in-fact or implied-in-law contracts ................................................ 11

        1.  The Knox-Keene Act prohibits "implied" contracts with providers for non-emergency services .......................... 11

        2.  AIS fails to allege the elements of an implied-in-fact contract .................................................................. 12

        3.  AIS fails to allege the elements of an implied-in-law contract .................................................................. 14

    C.  AIS does not state a claim for breach of contract by assignment ....... 15

    D.  AIS does not state a claim for services rendered ................ 17

    E.  AIS does not state a claim for unfair competition .............. 17

    F.  The Court should strike the jury trial demand as to ERISA and UCL claims .............................................................. 21

V.  CONCLUSION .................................................................... 21

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Advanced Choices, Inc. v. Department of Health Services,*

5

182 Cal.App.4th 1661 (2010)................................................................ 14

6

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp.,*
99 F.Supp.3d 1110 (C.D. Cal. 2015).................................................... 8

7

*Amato v. Bernard,*

8

618 F.2d 559 (9th Cir. 1980).................................................................. 6

9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................... 2, 3

10

*Bank of the West v. Superior Court,*

11

2 Cal.4th 1254 (1992)............................................................................ 19

12

*Baugh v. CGS, Inc.,*

13

828 F. Supp. 745 (N.D. Cal. 1993)........................................................ 19

14

*Becerra v. McClatchy Co.,*
69 Cal.App.5th 913 (2021)..................................................................... 17

15

*Beverly Oaks Phys. Surg. Ctr., LLC v. Blue Cross & Blue Shield of Ill.,*

16

983 F.3d 435 (9th Cir. 2020)................................................................. 10

17

*Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.,*
118 F.Supp.2d 1002 (C.D. Cal. 2000)............................................. 12, 14

18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*

19

20 Cal.4th 163 (1999)............................................................................ 18

20

*Center for Neuro Skills v. Blue Cross of Cal.,*

21

2013 WL 5670889 (E.D. Cal., Oct. 15, 2013) ...................................... 18

22

*City of San Jose v. Forsythe,*
261 Cal.App.2d 114 (1968).................................................................. 15

23

*Coto Settlement v. Eisenberg,*

24

593 F.3d 1031 (9th Cir. 2010)................................................................ 7

25

*Day v. Alta Bates Med. Ctr.,*
98 Cal.App.4th 243 (2002).................................................................. 14

26

*Day v. AT&T,*

27

63 Cal.App.4th 325 (1998)................................................................... 19

28

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona,*
    852 F.3d 868 (9th Cir. 2017) .......................................................................... 4, 5, 10

*Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust,*
    50 F.3d 1478 (9th Cir. 1995) ................................................................................ 5, 8

*Dignity Health v. Local Initiative Health Care Authority of Los Angeles
    County,*
    44 Cal.App.5th 144 (2020) ....................................................................................... 20

*Dragu v. Motion Picture Indus. Health Plan for Active Participants,*
    2015 WL 13037266 (N.D. Cal. Feb. 9, 2015) ........................................................ 3

*Drum v. San Fernando Valley Bar Ass'n,*
    182 Cal.App.4th 247 (2010) ..................................................................................... 18

*Durell v. Sharp Healthcare,*
    183 Cal.App.4th 1350 (2010) ................................................................................... 18

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.,*
    2011 WL 2748724 (N.D. Cal. July 13, 2011) ........................................................ 3

*Foster v. Blue Shield of California,*
    2009 WL 1586039 (C.D. Cal. June 3, 2009) .......................................................... 8

*Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.,*
    805 F.App'x 530 (9th Cir. 2020) ............................................................................. 3

*Hambrick v. Healthcare Partners Med. Grp., Inc.,*
    238 Cal. App. 4th 124 (2015) ................................................................................... 18

*Hodge v. Superior Court,*
    145 Cal.App.4th 278 (2006) ..................................................................................... 21

*Huskinson & Brown, LLP v. Wolf,*
    32 Cal.4th 453 (2004) ............................................................................................... 14

*In re First Am. Corp. ERISA Litig.,*
    2009 WL 536254 (C.D. Cal. Feb. 9, 2009) ............................................................ 21

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.,*
    903 F.Supp.2d 880 (C.D. Cal. 2012) ...................................................................... 7

*Ingram v. Martin Marietta Long Term Disability Income Plan,*
    244 F.3d 1109 (9th Cir. 2001) ................................................................................. 21

iii

# TABLE OF AUTHORITIES
(continued)

**Page**

*Korman v. ILWU-PMA Claims Office*,
   2019 WL 1324021 (C.D. Cal. March 19, 2019) .........................................passim

*Lauderdale v. NFP Retirement, Inc.*,
   2022 WL 17259050 (C.D. Cal. Nov. 17, 2022) .................................................... 2

*Masterson v. Sine*,
   68 Cal.2d 222 (1968) ........................................................................................ 15

*Matter of Duquette*,
   2021 WL 2142667 (E.D. Cal. May 26, 2021) ................................................... 21

*Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*,
   2011 WL 13186107 (C.D. Cal. March 8, 2011) ................................................. 5

*Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*,
   181 Cal.App.4th 60 (2010) ............................................................................... 17

*Obstetricians-Gynecologists, P.C. v. Blue Cross and Blue Shield of
   Nebraska*,
   361 N.W. 2d 550 (Neb. 1985) .......................................................................... 16

*Ochs v. PacifiCare of Cal.*,
   115 Cal.App.4th 782 (2004) ........................................................................14, 19

*Orthopedic Specialists of S. California v. Pub. Employees' Ret. Sys.*,
   228 Cal. App. 4th 644 (2014) ........................................................................... 19

*Pacific Bay Recovery v. California Phys. Svcs., Inc.*,
   12 Cal.App.5th 200 (2017).............................................................................passim

*People v. Uber Techs., Inc.*,
   56 Cal.App.5th 266 (2020)................................................................................ 20

*Perez v. Banana Republic, LLC*,
   2014 WL 2918421 (N.D. Cal. June 26, 2014) .................................................... 2

*Raygoza v. ConAgra Foods, Inc. Welfare Benefit Wrap Plan*,
   2016 WL 9454419 (C.D. Cal. Nov. 4, 2016) ...................................................... 3

*San Francisco Newspaper Printing Co. v. Superior Court*,
   170 Cal.App.3d 438 (1985) ............................................................................... 15

*Simi Surgical Ctr. v. Connecticut Gen. Life Ins. Co.*,
   2017 WL 10605926 (C.D. Cal. Sept. 27, 2017).............................................. 4, 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Simi Surgical Ctr. v. Connecticut Gen. Life Ins. Co.*,
   2018 WL 6332285 (C.D. Cal. Jan. 4, 2018)..........................................................4

*Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of
   New Jersey*,
   785 A.2d 457 (N.J. Sup. Ct., App. Div. 2001) .............................................15, 16

*Spinedex Physical Therapy USA v. United Healthcare of Arizona*,
   770 F.3d 1282 (9th Cir. 2014)..................................................................5, 9, 10

*St. Francis Regional Med. Ctr. v. Blue Cross Blue Shield of Kansas*,
   810 F. Supp. 1209 (D. Kan. 1992) ................................................................16

*Tenet Healthsystem Desert v. Fortis Ins. Co.*,
   520 F.Supp.2d 1184 (C.D. Cal. 2007)...................................................12, 13, 14

*Unilab Corp. v. Angeles-IPA*,
   244 Cal.App.4th 622 (2016) .........................................................................12

*US Airways v. McCutchen*,
   569 U.S. 88 (2013) ......................................................................................3

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
   546 F.3d 620 (9th Cir. 2008) ..........................................................................5

*Watkins v. Westinghouse Hanford Co.*,
   12 F.3d 1517 (9th Cir. 1993) ..........................................................................3

*Wit v. United Behavioral Health*,
   58 F.4th 1080 (9th Cir. 2023).....................................................................5, 7

*Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*,
   2022 WL 757315 (C.D. Cal. Feb. 2, 2022) .....................................................13

*Zenith Ins. Co. v. Cozen O'Connor*,
   148 Cal.App.4th 998 (2007) .........................................................................12

**STATUTES**

29 U.S.C. § 1132(a) ..........................................................................2, 7, 9

29 U.S.C. § 1132(a)(1)(B) ......................................................................2, 3

29 U.S.C. § 1132(a)(3) ...........................................................................2, 5

29 U.S.C. § 1144(a) ................................................................................2

Cal. Bus. & Prof. Code § 17200 ..............................................................1, 19

v

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3   Health & Saf. Code § 1340 et seq. ........................................................... 1

4   Health & Saf. Code § 1342.6 .......................................................... 11, 17

5   Health & Saf. Code § 1348 .................................................................. 20

6   Health & Saf. Code § 1371(a)(1)-(4).................................................... 20

7   Health & Saf. Code § 1371(b) ............................................................. 20

8   Health & Saf. Code § 1371.37 ............................................................ 17

9   Health & Saf. Code § 1371.37(b) ........................................................ 18

10  Health & Saf. Code § 1371.37(d)(1) ................................................... 18

    Health & Saf. Code § 1371.37(f) ........................................................ 18

11  Health & Saf. Code § 1379(a) ............................................................. 11

12

**OTHER AUTHORITIES**

13  29 C.F.R. § 2560.503-1(l)................................................................ 6, 9

14  29 C.F.R. § 2560.503-1(l)(1) .............................................................. 9

15  Cal. Code Regs., tit. 28, § 1300.71(a)(3)(A) ...................................... 11

16  Cal. Code Regs., tit. 28, § 1300.71(a)(3)(C) ...................................... 11

17  Cal. Code Reg., tit. 28, §§ 1300.71(c) ............................................... 20

18  Cal. Code Reg., tit. 28, §§ 1300.71(d) ............................................... 20

19  Cal. Code Reg., tit. 28, §§ 1300.71(g) ............................................... 20

20  Cal. Code Reg., tit. 28, §§ 1300.71(h) ............................................... 20

**RULES**

21  Fed. R. Civ. Proc. 12(b)(6) ........................................................... 1, 2, 7

22  Fed. R. Civ. Proc. 12(f)............................................................... 1, 2, 21

23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Advanced Infusion Solutions ("AIS"), an out-of-network compounding pharmacy and home infusion therapy provider, seeks payment for services and medications it allegedly provided to patients covered by health plans or insurance policies issued by Defendants Blue Shield of California Life & Health Insurance Company and California Physicians' Service dba Blue Shield of California (collectively, "Blue Shield"). AIS sues on its own behalf and as a purported assignee of an unknown number of patients, but does not identify any patient, any plan or terms that allegedly provide coverage, or any assignment. All of AIS's counts fail to allege facts sufficient to state a claim and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

In addition, the law does not provide a right to a jury on AIS's counts for violation of ERISA or the unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200, and the jury demand as to these claims should be stricken under Rule 12(f).

### II.   ALLEGATIONS OF THE COMPLAINT

AIS alleges as follows: Blue Shield provides health care coverage to AIS's patients and/or administers benefits for other payors, including for ERISA plans.[1] (Compl. ¶¶ 7-9.) AIS rendered home infusion therapy and related services to Blue Shield members and billed Blue Shield as an out of network provider for certain services at a bundled per diem rate using code S9328. (*Id.* ¶¶ 44, 47.) Blue Shield paid AIS's claims for code S9328 (*id.* ¶ 47), until April 2021, when Blue Shield requested medical records for 37 patients. (*Id.* ¶ 48.) In August 2021, Blue Shield demanded recoupment of overpayments made on claims for the 37 members. (*Id.* ¶

---

[1] Blue Shield of California ("BSC") is a health care service plan licensed by the Department of Managed Health Care and subject to the Knox-Keene Act, Cal. Health & Saf. Code § 1340 et seq. Blue Shield of California Life & Health Insurance Company ("BSL") is an insurance company licensed by the Department of Insurance and subject to the Insurance Code. (Compl. ¶ 6.)

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

50 & Ex. B.) AIS provided additional information (*id.* ¶ 52 & Ex. C). In October 2021, Blue Shield sent a final demand for recoupment. (*Id.* ¶ 52 & Ex. D.) AIS appealed in November 2021. (*Id.* ¶¶ 54-56 & Ex. E.) In June 2022, Blue Shield denied the appeal. (*Id.* ¶ 57 & Ex. F.) In November 2022, Blue Shield notified AIS that it was putting AIS on prepayment claims review. (*Id.* ¶ 58 & Ex. G.) In December 2022, AIS again appealed the overpayment demand. (*Id.* ¶ 59 & Ex H.)

## III.   STANDARD GOVERNING MOTION

"[A] complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Under Rule 12(b)(6), a court may dismiss a clam that is grouped together with other claims in a single cause of action, without dismissing the entire cause of action." *Perez v. Banana Republic, LLC*, 2014 WL 2918421, at *2 (N.D. Cal. June 26, 2014).

A motion under Rule 12(f) seeking to strike a demand for jury trial may be granted "where, as a matter of law, the plaintiff has no right to a jury trial." *Lauderdale v. NFP Retirement, Inc.*, 2022 WL 17259050, at *1 (C.D. Cal. Nov. 17, 2022).

## IV.   ARGUMENT

### A.   AIS does not state an ERISA claim.

AIS's third count for failure to pay ERISA plan benefits under 29 U.S.C. § 1132(a)(1)(B) and its fourth count for failure to properly handle claims under 29 U.S.C. § 1132(a)(3) fail to state a claim.[2]

#### 1.   AIS's third count fails to plead specific ERISA plan terms that provide the benefits at issue.

Because "ERISA's principal function" is "to protect contractually defined benefits," ERISA's "statutory scheme …'is built around reliance on the face of

---

[2] To the extent AIS alleges violations of state law as to ERISA plan members, such claims are preempted. 29 U.S.C. §§ 1132(a), 1144(a).

written plan documents.'" *US Airways v. McCutchen*, 569 U.S. 88, 100-01 (2013) (citation omitted). Thus, "[t]o state a claim under [29 U.S.C. § 1132(a)(1)(B)], a plaintiff must allege facts that establish the existence of an ERISA plan *as well as the provisions of the plan that entitle it to benefits*." *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) (emphasis added). Recovery under section 1132(a)(1)(B) is "limited to those benefits that the plaintiff contends are actually covered under the Plan's existing terms." *Raygoza v. ConAgra Foods, Inc. Welfare Benefit Wrap Plan*, 2016 WL 9454419, at *5 (C.D. Cal. Nov. 4, 2016) (citing *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1528 (9th Cir. 1993)). A complaint must "make reference to the 'specific plan term that confers the benefit in question.'" *Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 2015 WL 13037266, at *2 (N.D. Cal. Feb. 9, 2015) (citation omitted).

AIS does not allege any specific plan term violated by Blue Shield. It says only that it "is informed and believes that Blue Shield's plans provide that it will reimburse medically necessary, covered services rendered by AIS." (Compl. ¶ 95.) This conclusory allegation is insufficient to state a claim. As the Ninth Circuit explained, in affirming dismissal:

> GOSC's complaint fails to state a claim . . . because it does not identify: (i) any ERISA plan, apart from vague references to anonymous patients who allegedly assigned rights to GOSC; or (ii) any plan terms that specify benefits that the defendants were obligated to pay but failed to pay. These deficiencies are exacerbated by GOSC's decision to lump 44 separate events — presumably involving distinct ERISA plans, coverage provisions, medical procedures, and insurer communications — into a single set of generalized allegations. *Such allegations cannot give rise to a "reasonable inference that [the insurer] is liable" for medical care covered by the terms of ERISA plans to which GOSC's patients were participants or beneficiaries....* Dismissal of this claim was therefore proper.

*Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*, 805 F.App'x 530, 531 (9th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678; emphasis added). AIS's complaint suffers from the same defects, failing to identify any plan or plan terms,

1  and seeking to lump together claims for multiple patients who may be covered

2  under different plans with differing terms. Without identifying specific plan terms

3  providing coverage, AIS cannot state a claim and the third count must be dismissed.

4  *See Korman v. ILWU-PMA Claims Office*, 2019 WL 1324021, at *12 (C.D. Cal.

5  March 19, 2019); *Simi Surgical Ctr. v. Connecticut Gen. Life Ins. Co.*, 2017 WL

6  10605926, at *4 (C.D. Cal. Sept. 27, 2017).

7              **2.     AIS's fourth count is outside the scope of the alleged**
               **assignments.**

8

9              AIS alleges its ERISA counts as a purported assignee of its patients. *See infra*

10  Part IV.A.3, 4. While assignments by ERISA beneficiaries may confer standing,

11  "[t]he rights of healthcare providers under an assignment are limited to the

12  language of the purported assignment and ...'[a]ssignment agreements are generally

13  interpreted narrowly' and 'the scope of an assignment cannot exceed the terms of

14  the assignment agreement itself.'" *Simi Surgical Ctr. v. Connecticut Gen. Life Ins.*

15  *Co.*, 2018 WL 6332285, at *4 (C.D. Cal. Jan. 4, 2018) (citations omitted). "The

16  question of what rights and remedies pass with a given assignment depends upon

17  the intent of the parties." *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona*,

18  852 F.3d 868, 876 (9th Cir. 2017). The court looks to the language and context of

19  an assignment to determine its scope. *Id.*

20             AIS alleges that its assignments, "contained in 'Financial Responsibility/

21  Assignment of Benefits' forms," state as follows:

22             I assign and transfer to AIS Healthcare, its agents and assigns, *any and*
               *all rights to receive any insurance benefits otherwise payable to me* for

23             products or services provided by AIS Healthcare. I authorize my
               insurance company or its agents to furnish AIS Healthcare, its agents

24             and assigns, any and all information pertaining to my insurance
               benefits and status of claims submitted by AIS Healthcare, its agents

25             and assigns."

26  (Compl. ¶ 92 (emphasis added).) This language only gives AIS the right to be paid.

27  It does not assign the patient's right to sue his or her plan.

28

1    But even if it could be interpreted to assign the member's right to sue for

2  benefits, it certainly does not assign any right to seek declaratory or injunctive relief

3  for alleged procedural violations under ERISA section 502(a)(3). In *DB*

4  *Healthcare*, the court considered a similar assignment stating "I Hereby Authorize

5  My Insurance Benefits to Be Paid Directly to the Physician." 852 F.3d at 876. The

6  court held this provision:

> indicates the plan subscribers[] intended to assign, at most, the right to
> payment of benefits and the associated right to sue for non-payment.
> The authorization is located on a form that lists types of medical
> services. The assignment language refers only to direct payment of
> insurance benefits to the physician, with no reference to any broader
> rights. There is no doubt that this authorization does not encompass the
> Center's claims for declaratory and injunctive relief with regard to
> offsetting of overpayments against largely unrelated claims, or for
> breach of fiduciary duty.

12  *Id.* at 877; *see also Spinedex Physical Therapy USA v. United Healthcare of*

13  *Arizona*, 770 F.3d 1282, 1292 (9th Cir. 2014); *Methodist Hosp. of S. Cal. v. Blue*

14  *Cross of Cal.*, 2011 WL 13186107, at *6 (C.D. Cal. March 8, 2011). As in these

15  cases, the alleged language of the assignments here is limited to recovery of

16  benefits, and does not authorize AIS to seek equitable relief under section

17  502(a)(3).  The fourth count must be dismissed.

### 3.  AIS fails to allege exhaustion of ERISA plans' remedies.

#### a.  AIS fails to allege exhaustion of any ERISA claim.

20    "ERISA mandates an opportunity for administrative review, and [the Ninth

21  Circuit] ha[s] treated completion of this administrative review as a prudential

22  exhaustion requirement." *Wit v. United Behavioral Health*, 58 F.4th 1080, 1097-98

23  (9th Cir. 2023) (citation omitted). The Ninth Circuit has "consistently held that

24  before bringing suit under § [1132], an ERISA plaintiff claiming a denial of

25  benefits 'must avail himself or herself of a plan's own internal review procedures.'"

26  *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir.

27  2008) (quoting *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d

28  1478, 1483 (9th Cir. 1995)). Requiring participants to exhaust the administrative

process furthers the purposes of ERISA by serving to "reduce the number of frivolous lawsuits," to "promote the consistent treatment of claims for benefits," to "provide a nonadversarial method of claims settlement," and to "minimize the costs of claims settlement." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980). To adequately allege exhaustion, AIS must do more than assert generalizations as to its multiple unspecified claims. As one court explained,

> "[w]ithout identifying the relevant ERISA plans, Simi [a provider] cannot allege that it has exhausted the internal review procedures in those plans, or that pursuit of such remedies would be futile or inadequate.... Simply alleging that Simi 'timely and fully appealed [Cigna's] payment position' and 'has exhausted all of its administrative requirements under ERISA' is insufficient to plead that Simi pursued the available relief under the internal claims procedures in the ERISA plans of the 173 plaintiffs for whom Simi claims to be an assignee. Those allegations are conclusory statements that the Court cannot accept simply as true."

*Simi Surgical*, 2017 WL 10605926, at *3 (C.D. Cal. Sept. 27, 2017) (citations omitted).

AIS alleges only that it appealed Blue Shield's recoupment demand as to 37 patients (none of whom is alleged to be a member of an ERISA plan) and that it appealed Blue Shield's decision to put AIS on prepayment review. (Compl. ¶ 55.) It does not allege a single instance in which it appealed or exhausted the administrative process as to any ERISA plan member.

### b. AIS fails to allege any viable excuse for failure to exhaust.

AIS does not allege any basis for the Court to excuse its failure to exhaust. It alleges:

> To the extent there are any claims not fully appealed, in light of Blue Shield's breach of its obligations (including, but not limited to, Aetna's [sic] insufficient EOBs, and systematic failures, nonetheless, the ERISA regulations provide that the claimants "shall be deemed to have exhausted the administrative remedies under the plan ..." 29 C.F.R. § 2560.503-1(l). Similarly, because of Blue Shield's nonsensical explanations for the denials of AIS Healthcare's claims in its EOBs and other communications, any appeals by AIS Healthcare would have been futile.

(Compl. ¶ 99.) These purported excuses cannot support AIS's claims.

**(1)**      **A court cannot create an exception to exhaustion where the ERISA plan language is absolute.**

The Ninth Circuit recently held that where the language of an ERISA plan requires exhaustion of remedies prior to suit, a court *may not* apply any of the exceptions to the exhaustion requirement:

> When an ERISA plan does not merely provide for administrative review but ... explicitly mandates exhaustion of such procedures before bringing suit in federal court and, *importantly, provides no exceptions, application of judicially created exhaustion exceptions would conflict with the written terms of the plan.*

*Wit*, 58 F.4th at 1098 (emphasis added). *Wit* reversed a district court ruling excusing exhaustion for a class where some of the ERISA plans required exhaustion. *Id.*

The burden is on AIS to allege facts demonstrating a viable basis to excuse exhaustion. "Courts in this Circuit have placed the burden on a 'plaintiff seeking excuse from the exhaustion requirement [to] provide support for [the] excuse' at the motion to dismiss stage.... The Court does not think it imposes an undue burden at the pleading stage to require that the ERISA Plaintiffs allege that *someone* unsuccessfully exhausted their administrative remedies ...." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F.Supp.2d 880, 919-20 (C.D. Cal. 2012) (emphasis in original); *see also Korman*, 2019 WL 1324021, at *14.

A typical Blue Shield ERISA plan contains language similar to the following: "[Y]ou may have the right to bring a civil action under Section 502(a) of ERISA *if all required reviews of your claim have been completed* and your claim has not been approved." (Barcena Decl. Ex. 2 p. 109 (emphasis added).)[3] This

---

[3] In ruling on a Rule 12(b)(6) motion, the court considers the allegations of the complaint and also "materials incorporated into the complaint . . . [including] documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). AIS's complaint relies on patients' ERISA plans. (Compl. ¶¶ 95, 108.)

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   language is absolute and permits no exceptions. Thus, unless AIS alleges (as it has

2   not done) that the language of the ERISA plans at issue permits application of

3   exceptions to the exhaustion requirement, then it has not met its burden to provide a

4   basis for the Court to recognize any exception.

5   **(2)    AIS fails to allege futility.**

6           If the Court considers exceptions to exhaustion, AIS has failed to allege any

7   factual basis here. For instance, AIS asserts that exhaustion should be excused

8   because it "would have been futile." (Compl. ¶ 99.) But general and conclusory

9   allegations are insufficient. *Korman*, 2019 WL 1324021, at *14 ("bare assertions

10  that the administrative process embodied in the ERISA Plan would be futile or

11  would not amount to an adequate remedy in Plaintiff's pursuit of a fair review of

12  the denial of Plaintiff's claims for payment are insufficient at this stage to support

13  the argument that Plaintiff is excused from adhering to the ERISA Plan's

14  administrative process.").

15          "The futility exception is narrow—the plan participant 'must show that it

16  is certain that [her] claim will be denied on appeal, not merely that [she] doubts that

17  an appeal will result in a different decision.'" *Almont Ambulatory Surgery Ctr.,

18  LLC v. UnitedHealth Grp.*, 99 F.Supp.3d 1110, 1179 (C.D. Cal. 2015) (citation

19  omitted); *Diaz*, 50 F.3d at 1485 ("bare assertions of futility are insufficient to bring

20  a claim within the futility exception, which is designed to avoid the need to pursue

21  an administrative review that is demonstrably doomed to fail"). Therefore, "[a]

22  plaintiff seeking excuse from the exhaustion requirement must provide support for

23  excuse....  Courts tend to require that a plaintiff asserting futility proffer facts and

24  circumstances indicating why administrative review would be futile." *Foster v.

25  Blue Shield of California*, 2009 WL 1586039, at *5 (C.D. Cal. June 3, 2009). And

26  where a plaintiff has entirely failed to even initiate the administrative process,

27  futility is nearly impossible to establish. Id.

28

Here, AIS alleges that "because of Blue Shield's nonsensical explanations for the denials of AIS Healthcare's claims in its EOBs and other communications, any appeals by AIS Healthcare would have been futile." (Compl. ¶ 99.) AIS has not identified even one fact or circumstance, as to even one claim, demonstrating that an administrative appeal was "certain" to fail.

(3)    <strong>AIS fails to allege a basis for any claim to be deemed exhausted.</strong>

AIS also relies on 29 C.F.R. section 2560.503-1(*l*), which states that "in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of [29 C.F.R. § 2560.503-1], a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under [29 U.S.C. § 1132(a)] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l)(1). (Compl. ¶ 99.) This allegation also fails to excuse exhaustion.

The Ninth Circuit has "adopt[ed]" the position to require "'deemed exhaustion' for violations more serious than de minimis violations." *Spinedex*, 770 F.3d at 1299. A plaintiff must plead a sufficient factual basis to invoke this exception. *Korman*, 2019 WL 1324021, at *14 ("Plaintiff has not articulated any non-conclusory basis to conclude that the administrative procedures in the ERISA Plan are unreasonable under the applicable ERISA regulations or otherwise."). AIS generally alleges that Blue Shield failed to provide AIS with sufficient information regarding the basis for the recoupment demand or the denial of claims. (Compl. ¶¶ 51, 52, 62, 66, 106-108.) This lacks any factual content and is insufficient.

<strong>4.    AIS lacks standing to sue under ERISA where it did not obtain a valid assignment.</strong>

Providers like AIS may not assert ERISA claims on their own behalf. "Among the parties who may sue under ERISA § 502(a) are health plan

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

'beneficiaries.' ... [H]ealth care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions." *DB Healthcare*, 852 F.3d at 874-75 (citations omitted). A provider may obtain derivative standing via a valid assignment from a plan beneficiary/patient. *Id.* at 876. However, a provider without a valid assignment may not sue under ERISA and its asserted ERISA claims must be dismissed. *Id.*

By its own admission, AIS did not obtain assignments from each patient who is a member of an ERISA plan. *See* Compl. ¶ 91 (AIS "obtained assignment of health care benefits . . . for *a number of Members enrolled in ERISA plans*") (emphasis added). AIS was required to identify the members and the purported assignments.

### 5.   AIS has no valid assignment where the member's ERISA plan precludes assignment.

"Anti-assignment clauses in ERISA plans are valid and enforceable." *Spinedex*, 770 F.3d at 1296. Although AIS has not identified any specific plans, Blue Shield's ERISA plans typically expressly bar assignment, such as provisions that state: "Coverage or any Benefits of this Plan may not be assigned without the written consent of Blue Shield." (Barcena Decl. Ex. 2 p. 106.)[4] For any claims covered by such plans, AIS cannot allege a valid assignment and cannot sue for ERISA violations.[5]

---

[4] *See supra* n. 3.
[5] An ERISA plan may in some cases waive the right to enforce an anti-assignment clause where it was aware that a claimant was acting as assignee but "held that [anti-assignment] provision in reserve as a reason to deny benefits." *Beverly Oaks Phys. Surg. Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 442 (9th Cir. 2020). AIS alleges no facts to support any assertion that Blue Shield held the anti-assignment clauses in reserve as a reason to deny benefits. *Korman*, 2019 WL 1324021, at *10 ("Plaintiff has not alleged that Defendant's conduct amounted to a waiver of Defendant's right to rely on the anti-assignment provisions as a defense to the assignments of the ERISA Plan benefits to Plaintiff.").

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.**   **AIS does not state a claim for breach of implied-in-fact or implied-in-law contracts.**

   **1.**   **The Knox-Keene Act prohibits "implied" contracts with providers for non-emergency services.**

AIS's implied contract counts against BSC fail because the Knox-Keene Act prohibits "implied" provider agreements for non-emergency services.[6] Health & Safety Code section 1379(a) requires that "*[e]very contract* between a plan and a provider of health care services *shall be in writing* ...." (Emphasis added.)

"The Knox–Keene Act is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care.... DMHC regulations govern submission and payment of claims." *Pacific Bay Recovery v. California Phys. Svcs., Inc.*, 12 Cal.App.5th 200, 207 (2017). The writing requirement for non-emergency services is reflected in the Knox-Keene Act's highly articulated reimbursement scheme, which does not recognize the concept of unwritten contracts for non-emergency services. Cal. Code Regs., tit. 28, § 1300.71(a)(3)(A), (C). A primary policy of the Knox-Keene Act is to *encourage* plan-provider contracting in order to manage health care costs. Health & Saf. Code § 1342.6.

As a provider that has chosen not to contract with Blue Shield, AIS has no direct relationship with BSC and no right to payment from BSC other than at "the amount set forth in the enrollee's Evidence of Coverage." Cal. Code Regs., tit. 28, § 1300.71(a)(3)(C). It makes no sense and serves no policy to impose on a Knox-Keene-regulated health plan implied contractual obligations that would place a non-contracted provider in a better position than one with a written, negotiated, cost-controlled contract.

---

[6] AIS does not allege that it provides emergency services, and in fact its description of its services is inconsistent with an emergency. (Compl. ¶¶ 11-30.)

1    **2.    AIS fails to allege the elements of an implied-in-fact**
2    **contract.**

3    An implied-in-fact contract "in no less degree than an express contract, must
4    be founded upon an ascertained agreement of the parties to perform it .... Although
5    an implied in fact contract may be inferred from the 'conduct, situation or mutual
6    relation of the parties, the very heart of this kind of agreement is an *intent* to
7    promise.'" *Zenith Ins. Co. v. Cozen O'Connor*, 148 Cal.App.4th 998, 1010 (2007)
8    (citation omitted; emphasis in original). "[A]n implied-in-fact contract requires an
9    *ascertained agreement* of the parties." *Unilab Corp. v. Angeles-IPA*, 244
10   Cal.App.4th 622, 636 (2016) (emphasis added). The intent to agree is not alleged
11   here.

12   AIS alleges that "AIS Healthcare and Defendants entered into implied-in-fact
13   contracts through their course of conduct for services that were pre-certified or
14   authorized by Blue Shield, or for services where pre-certification was not needed
15   …, whereby AIS Healthcare then provided services to the patients and Blue Shield
16   thereby agreed to pay for such services." (Compl. ¶ 69.) This does not allege a
17   viable claim.

18   First, the law is clear that a carrier's pre-certification or pre-authorization
19   does *not* constitute an agreement or manifestation of intent to pay for services.
20   "[W]ithin the medical insurance industry, an insurer's verification is not the same
21   as a promise to pay." *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118
22   F.Supp.2d 1002, 1008 (C.D. Cal. 2000); *see also Pacific Bay*, 12 Cal.App.5th at
23   216. In *Tenet Healthsystem Desert v. Fortis Ins. Co.*, 520 F.Supp.2d 1184 (C.D.
24   Cal. 2007), a non-contracted provider sued a plan for breach of implied contract,
25   arguing the plan "verified that Mr. Wyatt was eligible for benefits and authorized
26   treatment," thus allegedly creating "an agreement that [provider] would care for and
27   treat Mr. Wyatt until discharge, and [plan] would cover [provider's] expenses." The
28   court found the provider failed to show the plan's consent to enter into a contract.

*Id.* at 1193-94. And in *Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*, 2022 WL 757315, at *7 (C.D. Cal. Feb. 2, 2022), the court dismissed an implied contract claim where "Plaintiffs concede that actions such as verifying benefits are insufficient to constitute an implied contract, yet actions such as verifying benefits are the basis of Plaintiffs' claim."

Second, to the extent AIS alleges an implied-in-fact contract based on AIS's rendering of services "where pre-certification was not needed" under the member's plan, AIS is alleging a contract arose simply because Blue Shield sold health care coverage contracts that did not require pre-authorization for certain services. That cannot constitute manifestation of Blue Shield's intent to be contractually bound to pay non-contracted providers of such services in a particular amount—or at all.

Third, allegations that Blue Shield through its conduct agreed to pay AIS its full billed "usual and customary charges" are not plausible. (Compl. ¶¶ 70-73.) As discussed, the policy of the managed health care system is to encourage written provider contracting to reduce and control costs, and the regulation limits the amount payable to a non-contracted provider to the amount set forth in the member's contract. It is implausible that Blue Shield, simply by offering plans that do not require pre-authorization, promised and incurred an implied contractual obligation to pay AIS its full charges. *Pacific Bay*, 12 Cal.App.5th at 216-17 ("as an out-of-network, nonemergency service provider, Pacific Bay was entitled to payment for treating Blue Shield's subscriber under the terms of the applicable EOC. Pacific Bay has not alleged that Blue Shield paid it improperly under the EOC").

Finally, AIS's claim is hopelessly vague. AIS alleges a contract was impliedly formed based on a series of distinct, undefined, and undescribed individual encounters with Blue Shield, each one specific to the particular circumstances regarding AIS's treatment of a particular patient. Without allegations identifying the conduct that allegedly created an implied contract to pay AIS's

1  claims regarding any particular person, AIS has failed to plead the existence of any
2  ascertainable contract.

3        **3.**     **AIS fails to allege the elements of an implied-in-law contract.**

4        The elements of a cause of action for implied-in-law contract or quantum
5  meruit under California law are well settled. "[I]n order to recover under a quantum
6  meruit theory, a plaintiff must establish *both* that he or she was acting pursuant to
7  either an *express or implied request* for such services *from the defendant and* that
8  the services rendered were *intended to and did benefit* the defendant." *Day v. Alta*
9  *Bates Med. Ctr.*, 98 Cal.App.4th 243, 248 (2002) (emphasis in original); *see also*
10  *Advanced Choices, Inc. v. Department of Health Services*, 182 Cal.App.4th 1661,
11  1673 (2010). In addition, the plaintiff must show "the circumstances were such that
12  'the services were rendered under some understanding or expectation of both
13  parties that compensation therefor was to be made.'" *Huskinson & Brown, LLP v.*
14  *Wolf*, 32 Cal.4th 453, 458 (2004) (emphasis added; citation omitted).

15        A health plan's pre-authorization of services is not a "request" by the plan
16  that the provider render services to a member. The very fact that AIS itself
17  allegedly contacted Blue Shield to inquire about the patients' coverage confirms
18  that the patients, not Blue Shield, requested the treatment. *Cedars Sinai*, 118
19  F.Supp.2d at 1013 ("Because Mid-West did not request, either expressly or
20  impliedly, that Cedars treat [the patient], it is not liable to Cedars under quantum
21  meruit theory."); *Tenet Healthsystem*, 520 F.Supp.2d at 1196 (provider's calls to
22  insurer to verify his insurance status did not constitute insurer's request for services
23  to support quantum meruit.").

24        AIS also does not allege a benefit to Blue Shield. "Generally speaking, a
25  health care service plan's agreement to pay for medical care is intended to benefit
26  the enrollees, not treating physicians with whom there is no contractual
27  relationship. . . ." *Ochs v. PacifiCare of Cal.*, 115 Cal.App.4th 782, 795-96 (2004).

28

Finally, allowing payment for services rendered under a quantum meruit theory, in the context of a managed care plan and a provider that has chosen to be non-contracted with that plan, leads to particularly perverse results. California law encourages plans to enter into contracts to contain costs, with the necessary result that some providers will not have a contract with a plan. AIS's theory would allow a non-contracted provider to recover greater payment than the contracted rate, a result directly at odds with the entire system of managed care. *Pacific Bay*, 12 Cal.App.5th at 215 ("Pacific Bay is using quantum meruit to recover something to which it is not entitled under the Knox-Keene Act or its applicable regulations. ... [T] amount Blue Shield owed Pacific Bay for treatment of the subscriber is limited by the applicable EOC.").

**C.     AIS does not state a claim for breach of contract by assignment.**

AIS alleges common-law breach of contract as assignee (Compl. ¶ 112). Blue Shield's contracts expressly prohibit assignment. (Barcena Decl. Ex. 1 p. 101.)[7] The California Supreme Court has made clear that "in the absence of a controlling statute, the parties may provide that a contract . . . is nontransferable." *Masterson v. Sine*, 68 Cal.2d 222, 230 (1968). Such clauses are "routinely enforced." *San Francisco Newspaper Printing Co. v. Superior Court*, 170 Cal.App.3d 438, 442 (1985); *City of San Jose v. Forsythe*, 261 Cal.App.2d 114, 117 (1968) (upholding restriction on assignment  under retirement plan and recognizing "the prevalence of nonassignability clauses respecting benefits" .

Cases from other jurisdictions demonstrate that enforcing anti-assignment clauses in health plan contracts furthers public policy. In *Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of New Jersey*, 785 A.2d 457, 460 (N.J. Superior Ct., App. Div. 2001), a non-contracted provider sued a health plan under a purported assignment of benefits, which the member's contract prohibited. The court explained that the public policy of free assignability "will not

[7] *See supra* n.3.

override competing, superior public interests. [¶] *[T]he validity of anti-assignment clauses in group health care contracts has been upheld almost uniformly in the courts of other states.*" *Somerset*, 785 A.2d at 460-61 (citations omitted; emphasis added).

The public policy—which contemplated that plans could contain healthcare costs by creating a network of contracted providers—weighed heavily in favor of enforcing anti-assignment clauses in health plans.

> We think it clear that the Legislature recognized ... the significance of creating a network of participating medical providers and its critical role in the success of this venture. Undeniably, Horizon's ability to control costs and hence provide affordable health care coverage is directly related to the number of medical providers participating in the program. Thus, inherent in its statutory mandate to control costs is a directive to Horizon to encourage broad participation in its network of plan medical providers. Undoubtedly, non-profit health service corporations such as Horizon rely on anti-assignment clauses as an important inducement to medical providers to join their insurance networks. Obviously, medical providers would have less reason to join if nonparticipating physicians could garner the same advantages without subjecting themselves to the contractual constraints.

*Id.* at 421; *see also St. Francis Regional Med. Ctr. v. Blue Cross Blue Shield of Kansas*, 810 F. Supp. 1209, 1219 (D. Kan. 1992) (upholding anti-assignment clauses in view of "the policy of attempting to restrain the growth of health care costs"); *Obstetricians-Gynecologists, P.C. v. Blue Cross and Blue Shield of Nebraska*, 361 N.W. 2d 550, 556 (Neb. 1985) (nonassignment clause "is a valuable tool in persuading health care providers to participate in its physician's voluntary cost effectiveness program and accept set fees for health services, keeping health care costs down and passing that savings on to its subscribers ...").

The Knox-Keene Act similarly expresses a legislative policy to encourage the creation of managed care entities that can provide care at reduced cost through a network of provider contracts:

> It is the intent of the Legislature to ensure that the citizens of this state receive high-quality health care coverage in the most efficient and cost-effective manner possible. In furtherance of this intent, **the Legislature finds and declares that it is in the public interest to promote various types of contracts between public or private payers**

1    ***of health care coverage and institutional or professional providers of
     health care services***.

2

3    Health & Saf. Code § 1342.6 (emphasis added). In order to incentivize providers to

4    contract, health plans must be able to offer contracted providers advantages not

5    available to non-contracted providers. For that reasons, anti-assignment provisions

6    must be enforced.

7            **D.     AIS does not state a claim for services rendered.**

8            AIS alleges that "[b]y words or conduct, Blue Shield requested that AIS

9    Healthcare perform" services to its members. (Compl. ¶ 116.) A cause of action for

10   "services rendered" is duplicative of the claims for breach of implied-in-fact and/or

11   implied-in-law contract, and fails for the same reasons.  The allegation is also

12   devoid of any factual detail or support, and fails for vagueness.

13           **E.     AIS does not state a claim for unfair competition.**

14           AIS fails to state an actionable claim for violation of the unlawful and unfair

15   prongs of the UCL.

16           First, AIS's "unlawful" claim is based on Health & Safety Code section

17   1371.37. That statute is part of the Knox-Keene Act, which applies solely to health

18   care service plans regulated by that Act. *Nieto v. Blue Shield of Cal. Life & Health*

19   *Ins. Co.*, 181 Cal.App.4th 60, 84-85 (2010). BSL is an insurer regulated by the

20   Insurance Code, as AIS alleges. (Compl. ¶ 6.) BSL is not subject to and cannot

21   violate section 1371.37, and the derivative UCL claim therefore fails. *Becerra v.*

22   *McClatchy Co.*, 69 Cal.App.5th 913, 951 (2021) ("where . . . a UCL claim is

23   derivative of an underlying violation of law, it must stand or fall with the

24   underlying claim").

25           Second, section 1371.37 provides that "the director" of the DMHC "may

26   investigate a health care service plan *to determine whether* it has engaged in an

27   unfair payment pattern" and that "[u]pon a final determination *by the director* that a

28   health care service plan has engaged in an unfair payment pattern," the director may

impose certain penalties. Health & Saf. Code § 1371.37(b), (d)(1) (emphasis
added). While the penalties do not affect "any other duty, right, responsibility, or
obligation under a statute or under a contract between a health care service plan and
a provider," *id.* § 1371.37(f), the wrongfulness of a plan's actions depends on a
determination by the director in the first instance. AIS does not allege the director
has made such a determination with respect to the conduct it alleges. *See, e.g.*,
*Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 150
(2015) ("courts have . . . abstained from adjudicating UCL . . . claims for violations
of the Knox-Keene Act and similar health care laws where determination of the
claims would require the court to assume the regulatory powers of the designated
administrative agency"). Thus, the UCL unlawful claim fails.

Third, the "unfair" claim also fails. The California Supreme Court has
defined "unfair" conduct under the UCL as that which "threatens an incipient
violation of an antitrust law, or violates the policy or spirit of one of those laws
because its effects are comparable to or the same as a violation of the law, or
otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.
v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999). Conduct must meet
that test or be "tethered to an[] underlying constitutional, statutory, or regulatory
provision ...." *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1366 (2010)
(applying test to UCL claim brought by patient against medical provider). AIS does
not allege that Blue Shield engaged in anticompetitive or similar conduct, and as
AIS is neither a competitor of Blue Shield nor a consumer, it does not state an
unfairness claim. *Center for Neuro Skills v. Blue Cross of Cal.*, 2013 WL 5670889,
at *9 (E.D. Cal., Oct. 15, 2013) (dismissing an "unfair" UCL claim brought by
health care provider against Anthem because provider was neither consumer nor
competitor). Moreover, AIS does not even attempt to allege facts supporting an
unfairness claim under any of the multiple tests courts have applied to such claims.[8]

---

[8] *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 256-57 (2010).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Fourth, the only monetary relief available under the UCL "is the disgorgement of money that has been wrongfully obtained." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992). The defendant must have "obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep." *Day v. AT&T*, 63 Cal.App.4th 325, 340 (1998). Otherwise, "any damage claim could be converted into an argument for restitution. Section 17200 plainly did not intend such a result." *Baugh v. CGS, Inc.*, 828 F. Supp. 745, 758 (N.D. Cal. 1993).

AIS's prayer for "restitution" is a disguised claim for damages allegedly suffered as a result of Blue Shield's alleged underpayment or nonpayment of claims. As a non-contracted provider, AIS has no relationship with Blue Shield, no right to payment by Blue Shield other than under the terms of Blue Shield's contracts with its members, and no vested property interest in the unpaid claims. *Pacific Bay*, 12 Cal.App.5th at 216-17 ("as an out-of-network, nonemergency service provider, Pacific Bay was entitled to payment for treating Blue Shield's subscriber under the terms of the applicable EOC"); *Ochs*, 115 Cal.App.4th at 795 (plan's benefits promised run to members, not providers). AIS's right to payment, if any, is against the plan member who chose to receive services outside of the plan's network. *Orthopedic Specialists of S. California v. Pub. Employees' Ret. Sys.*, 228 Cal. App. 4th 644, 648 (2014) (noting that the members' plans provide that the member must pay the non-contracted provider the balance not paid by the plan). AIS does not and cannot allege it gave Blue Shield something AIS was entitled to keep because AIS had no right to payment from Blue Shield. Instead, it is trying to obtain money it never previously had, in which it has no vested rights, and for which Blue Shield has no contractual, statutory, or other obligation to AIS. This is not "restitution," but damages unavailable under the UCL.

Finally, the injunction AIS requests is improper. The injunction would "requir[e] Blue Shield to cease and desist from refusing to process or pay claims,

1   and from flagging AIS Healthcare for prepayment review, based on the rationale

2   that AIS Healthcare should not be billing its services under S9328 on a per diem

3   basis." (Compl. ¶ 123.) This would enjoin Blue Shield from engaging in the

4   ordinary aspects of the claim processing function as it relates to AIS. "[A]n

5   injunction against legitimate business activities 'should go no further than is

6   absolutely necessary to protect the lawful rights of the parties seeking such

7   injunction.'" *People v. Uber Techs., Inc.*, 56 Cal.App.5th 266, 313 (2020) (citation

8   omitted).

9        In order to operate its business in accordance with the requirements of the

10  Knox-Keene Act, Blue Shield must have the freedom to apply the appropriate

11  payment rules and analyses to determine whether a claim is payable. Blue Shield is

12  required to review each of AIS's claims for medical necessity, proper

13  documentation, and proper authorization if required. Cal. Code Reg., tit. 28,

14  §§ 1300.71(c), (d), (g) & (h); Health & Safety Code §1348; *Dignity Health v. Local*

15  *Initiative Health Care Authority of Los Angeles County*, 44 Cal.App.5th 144, 153

16  (2020) ("[U]nder state law a managed care plan ... may ... require the out-of-

17  network [provider] to obtain the plan's prior authorization"); *Pacific Bay*, 12

18  Cal.App.5th at 207 ("DMHC regulations govern submission and payment of

19  claims" and "[t]hese statutes impose procedural requirements on claim

20  processing"); *see also* Health & Safety Code § 1371(a)(1)-(4), (b).

21       The injunctions AIS seeks would put Blue Shield under the threat of

22  contempt sanctions for processing individual claims in a manner that AIS finds

23  objectionable. Blue Shield would act at its peril in doing anything other than

24  immediately paying all of AIS's claims without question and relieving AIS of basic

25  requirements such as pre-authorization and medical necessity.

26       The prohibition on prepayment review that AIS seeks also is improper. Blue

27  Shield is entitled to monitor AIS's claims for billing and other irregularities. Even if

28  AIS is determined to have properly coded past claims under code S9328, that does

1  not remove Blue Shield's right and responsibility to ensure in the future that the

2  claims are coded correctly, but the requested injunction would preclude that.

3  **F.**    <u>**The Court should strike the jury trial demand as to ERISA and**</u>
        <u>**UCL claims.**</u>

4

5  Under Federal Rule of Civil Procedure 12(f), a court may strike immaterial

6  and impertinent matter, including a jury demand where the plaintiff has no right to a

7  jury trial. *Matter of Duquette*, 2021 WL 2142667, at \*4 (E.D. Cal. May 26, 2021)

8  (striking a jury demand under Rule 12(f)); *In re First Am. Corp. ERISA Litig.*, 2009

9  WL 536254, at \*1 (C.D. Cal. Feb. 9, 2009) (striking jury demand for ERISA

10  claim).

11  Here, AIS has no right to a jury trial on the ERISA counts. *Ingram v. Martin*

12  *Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1114 (9th Cir. 2001).

13  And AIS has no right to a jury trial on the UCL count. *Hodge v. Superior Court*,

14  145 Cal.App.4th 278, 284 (2006). The Court should strike the jury demand as to

15  these claims.

16  **V.**    <u>**CONCLUSION**</u>

17  For the reasons herein, the motions to dismiss and strike should be granted.

18

19  Dated: May 19, 2023              MANATT, PHELPS & PHILLIPS, LLP

20

21                        By: /s/ Gregory N. Pimstone

22                        *Attorneys for Defendants*
                      BLUE SHIELD OF CALIFORNIA

23                        LIFE & HEALTH INSURANCE
                      COMPANY and CALIFORNIA

24                        PHYSICIANS' SERVICE dba BLUE
                      SHIELD OF CALIFORNIA

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Blue Shield of California Life & Health Insurance Company and California Physicians' Service dba Blue Shield of California, certifies that this brief contains 6972 words, which complies with the word limit of L.R. 11-6.1.


Dated: May 19, 2023                MANATT, PHELPS & PHILLIPS, LLP


By: /s/ Gregory N. Pimstone
*Attorneys for Defendants*
BLUE SHIELD OF CALIFORNIA
LIFE & HEALTH INSURANCE
COMPANY and CALIFORNIA
PHYSICIANS' SERVICE dba BLUE
SHIELD OF CALIFORNIA